Alyssa Koepfgen
Katelyn Kinn
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PUGET SOUNDKEEPER ALLIANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| KAG WEST LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## I.    INTRODUCTION

1.    This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant's, KAG West LLC ("KAG West"), repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain

COMPLAINT - 1

stormwater discharges of pollutants from KAG West's facility in Tacoma, Washington to navigable waters.

## II.    JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Soundkeeper requests.

3.      Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified KAG West of its violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated and postmarked August 18, 2023 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue KAG West by mailing copies of the Notice Letter to these individuals on August 18, 2023.

4.      At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.      At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

COMPLAINT - 2

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    7.    The source of the violations complained of is in Pierce County, Washington,

2    within the Western District of Washington, and venue is therefore appropriate in the Western

3    District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28

4    U.S.C. § 1391(b).

5               ### III.    PARTIES

6    8.    Soundkeeper is suing on behalf of itself and its members.

7    9.    Soundkeeper is a non-profit corporation organized under the laws of the state of

8    Washington. Soundkeeper is dedicated to protecting and preserving the environment of

9    Washington State, especially the quality of its waters. Soundkeeper is a membership organization

10   and has at least one member who is injured by KAG West's violations.

11   10.    Soundkeeper has representational standing to bring this action. Soundkeeper's

12   members are reasonably concerned about the effects of discharges of pollutants, including

13   stormwater from Defendant's facility, on water quality and aquatic species and wildlife that

14   Soundkeeper's members observe, study, use, and enjoy. Soundkeeper's members are further

15   concerned about the effects of discharges from Defendant's facility on human health. In addition,

16   discharges from Defendant's facility lessen Soundkeeper's members' aesthetic enjoyment of

17   nearby areas. Soundkeeper has members who live, work, fish, and recreate around or use the

18   Blair and Hylebos Waterways and Commencement Bay which are affected by Defendant's

19   discharges. Soundkeeper's members' concerns about the effects of Defendant's discharges are

20   aggravated by Defendant's failure to record and timely report information about its discharges

21   and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic,

22   and/or health interests of Soundkeeper and its members have been, are being, and will be

23

24

COMPLAINT - 3

1    adversely affected by Defendant's violations of the CWA. The relief sought in this lawsuit can

2    redress the injuries to these interests.

3        11.    Soundkeeper has organizational standing to bring this action. Soundkeeper has

4    been actively engaged in a variety of educational and advocacy efforts to improve water quality

5    and to address sources of water quality degradation in the waters of Western Washington,

6    including the Blair and Hylebos Waterways and Commencement Bay. As detailed herein and in

7    the Notice Letter, Defendant has failed to comply with numerous requirements of its NPDES

8    permit including completing corrective actions, compliance with water quality standards and

9    sampling requirements, Stormwater Pollution Prevention Plan maintenance, monitoring,

10   recordkeeping, and permit violation reporting requirements. As a result, Soundkeeper is deprived

11   of information necessary to properly serve its members by providing information and taking

12   appropriate action to advance its mission. Soundkeeper's efforts to educate and advocate for

13   greater environmental protection, and to ensure the success of environmental restoration projects

14   implemented for the benefit of its members are also obstructed. Finally, Soundkeeper and the

15   public are deprived of information that influences members of the public to become members of

16   Soundkeeper, thereby reducing Soundkeeper's membership numbers. Thus, Soundkeeper's

17   organizational interests have been adversely affected by Defendant's violations. These injuries

18   are fairly traceable to Defendant's violations and are redressable by the Court.

19       12.    KAG West LLC is a corporation authorized to conduct business under the laws of

20   the state of Washington.

21       13.    KAG West LLC owns and operates a trucking facility and is located at or about

22   401 E Alexander Avenue, Tacoma, WA 98421 (referred to herein as the "facility").

23

24

COMPLAINT - 4

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

# IV.    LEGAL BACKGROUND

14.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

15.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

16.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 ISGP Permit"). The previous permit was issued December 3, 2014, became effective January 2, 2015, and expired December 31, 2019 (the "2015 ISGP Permit"). The 2015 ISGP Permit and 2020 ISGP Permit (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

17.    The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution

COMPLAINT - 5

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as <u>Exhibit 1</u> and incorporated herein by this reference.

**V.     FACTS**

18.     Ecology granted KAG West coverage for the facility under the 2015 ISGP Permit under Permit number WAR305116. Ecology granted subsequent coverage under the 2020 ISGP Permit under the same permit number, WAR305116.

19.     KAG West discharges stormwater and pollutants associated with industrial activity to the Blair and Hylebos Waterways and Commencement Bay.

20.     KAG West's facility is engaged in industrial activities including transportation with vehicle maintenance, among others. KAG West's facility has multiple distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter the Blair and Hylebos Waterways and Commencement Bay.

21.     KAG West has violated and continues to violate the "effluent limitations and standards" under the CWA by violating its NPDES Permit. 33 U.S.C. § 1365(f). KAG West's violations of the Permit are set forth in sections I through VII of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this reference. In particular, and among the other violations described in the Notice letter, KAG West has violated the Permit by failing to comply with water quality standards, failing to comply with AKART standards, failing to implement BMPs to control water quality, failing to implement corrective actions, failing to prepare and implement an adequate SWPPP, failing to collect quarterly samples, failing to analyze quarterly samples, failing to correctly and timely submit Discharge Monitoring Reports ("DMRs"), failing

COMPLAINT - 6

comply with visual monitoring requirements, failing to record information, failing to retain

records, and failing to report Permit violations.

22.    KAG West discharges stormwater from the facility containing levels of pollutants

that exceed the benchmark values established by the Permit, including the days on which KAG

West collected samples with the results identified in Table 1 and 2, and is likely to continue

discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1: Monitoring Point 1 Benchmark Exceedances**

| Quarter in which sample was collected | Turbidity (Benchmark: 25 NTU) | Copper (Benchmark: 14 µg/L) | Zinc (Benchmark: 117 µg/L) | Total Suspended Solids ("TSS") (Benchmark: 30 mg/L) |
|---|---|---|---|---|
| First Quarter 2019 1* 3* | | 35 | 130 | |
| Second Quarter 2020 1 3 | 49 | 34 72 | 180 | |
| Third Quarter 2020 1 3 | | 83 77 | 150 240 | |
| First Quarter 2021 1 3 | 26 | 15 16 | | 41 |

*1 and 3 are monitoring point designations known to KAG West

23.    The stormwater monitoring data provided in Table 1 shows benchmark

exceedances included in the stormwater monitoring results that KAG West submitted to

Ecology.

24.    KAG West's stormwater discharges are causing or contributing to violations of

water quality standards and therefore violate Permit Condition S10.A. Discharges from KAG

West's facility contribute to the polluted conditions of the waters of the state, including the water

quality standards of the Blair and Hylebos Waterways and Commencement Bay. Discharges

COMPLAINT - 7

1   from KAG West's facility contribute to the ecological impacts that result from the pollution of

2   these waters and to Soundkeeper and its members' injuries resulting therefrom. These

3   requirements and KAG West's violations thereof are described in detail in section I.A of the

4   Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference.

5       25.     KAG West's exceedances of the benchmark values indicate that KAG West is

6   failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and

7   BMPs. KAG West violated and continues to violate Permit Conditions S10 and S3 by not

8   developing, modifying, and/or implementing BMPs in accordance with the requirements of the

9   Permit, and/or by not applying AKART to discharges from the facility. These requirements and

10  KAG West's violations thereof are described in detail in section I.B and section II of the Notice

11  Letter, attached as Exhibit 1, and incorporated herein by this reference.

12      26.     KAG West has violated and continues to violate the monitoring requirements of

13  the Permit, Conditions S3.B.5, S4, S7, and S9.A and D. KAG West has failed to sample its

14  stormwater discharges once during every calendar quarter at each distinct point of discharge

15  offsite except for substantially identical outfalls. KAG West failed to analyze stormwater

16  samples for the required parameters. KAG West failed to submit DMRs by the prescribed

17  deadline in Permit Condition S9. KAG West failed to comply with visual monitoring

18  requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater

19  Monthly Inspection Reports by qualified personnel each and every month for the last five years.

20  KAG West's violations of the Permit's monitoring requirement are described in section III of the

21  Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. All these

22  violations are reasonably likely to recur.

23

24

COMPLAINT - 8

27.     KAG West triggered Level One Corrective Action requirements for each benchmark exceedance identified in Table 1 above. KAG West has violated the requirements of Permit Condition S8.B by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 above. These Corrective Action requirements and KAG West's violations thereof are described in section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

28.     KAG West triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year. KAG West has violated the requirements of Permit Condition S8.C by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year, including the benchmark exceedances listed in Table 1 above. These violations include KAG West's failure to perform Level Two Corrective Action requirements for copper triggered by its stormwater sampling during calendar year 2020; failure to fulfill these obligations for zinc triggered by its stormwater sampling during calendar year 2020. These corrective action requirements and KAG West's

COMPLAINT - 9

1    violations thereof are described in section IV.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>,

2    and are incorporated herein by this reference. These violations are reasonably likely to recur.

3        29.    KAG West has failed and continues to fail to comply with recordkeeping

4    requirements of Permit Condition S4.B. KAG West does not record and retain specified

5    information for each stormwater sample taken, including the sample date and time, a notation

6    describing if KAG West collected the sample within the first 30 minutes of stormwater discharge

7    event, an explanation of why KAG West could not collect a sample within the first 30 minutes of

8    a stormwater discharge event, the sample location, method of sampling and of preservation, and

9    the individual performing the sampling, as required by the Permit Condition. These requirements

10   and KAG West's violations thereof are described in section V.A of the Notice Letter, attached

11   hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are

12   reasonably likely to recur.

13       30.    KAG West has failed and continues to fail to comply with record keeping

14   requirements of 2015 ISGP Permit Condition S9.C, and 2020 Permit Condition S9.D. KAG West

15   does not retain for a minimum of five years a copy of the current Permit, a copy of KAG West's

16   coverage letter, records of all sampling information, inspection reports including required

17   documentation, any other documentation of compliance with permit requirements, all equipment

18   calibration records, all BMP maintenance records, all original recordings for continuous

19   sampling instrumentation, copies of all laboratory results, copies of all required reports, and

20   records of all data used to complete the application for the Permit, as required by the Permit

21   Conditions. These requirements and KAG West's violations thereof are described in section V.B

22   of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

23   These violations are reasonably likely to recur.

24

COMPLAINT - 10

31.    Conditions S9.E of the 2015 ISGP Permit and S9.F of the 2020 ISGP Permit require KAG West to take certain actions, including reporting to Ecology, in the event KAG West is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. KAG West has failed to comply with these requirements of the Permit by failing to report and subsequently correct permit violations, including each and every time KAG West failed to comply with corrective action requirements as described above in paragraphs 27-28, each and every time KAG West failed to sample a stormwater discharge as described above in paragraph 26, and each and every time KAG West discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraph 22 above. These violations are reasonably likely to recur.

32.    KAG West failed to provide Soundkeeper a copy of its SWPPP within fourteen days of Soundkeeper's request contained in the Notice Letter, as required by the 2020 Permit Condition S9.G.

## VI.    CAUSE OF ACTION

**NPDES Permit Violations**

33.    The preceding paragraphs and the allegations in the Notice Letter attached hereto as <u>Exhibit 1</u> are incorporated herein.

34.    KAG West's violations of the Permit described herein and in the Notice Letter constitute violations of violations of "effluent standards or limitations" under the CWA per 33 U.S.C. § 1365(a)(1) and (f)(7).

35.    No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

COMPLAINT - 11

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    36.    Prior notice of violations and claims was provided to Defendant and others as

2 required.

3    37.    These violations committed by KAG West are ongoing or are reasonably likely to

4 continue to occur. Any and all additional violations of the Permit and the CWA which occur

5 after those described in Soundkeeper's Notice Letter, but before a final decision in this action,

6 should be considered ongoing violations subject to this Complaint.

7    38.    Without the imposition of appropriate civil penalties and the issuance of an

8 injunction, KAG West is likely to continue to violate the Permit and the CWA to the further

9 injury of Soundkeeper, its members, and others.

10                    **VII.    RELIEF REQUESTED**

11    Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

12    A.    Issue a declaratory judgment that KAG West has violated and continues to be in

13 violation of the Permit and the CWA

14    B.    Enjoin KAG West from operating the facility in a manner that results in further

15 violations of the Permit and the CWA;

16    C.    Order KAG West to immediately implement a SWPPP that complies with the

17 2020 ISGP Permit at the facility;

18    D.    Order KAG West to allow Soundkeeper to participate in the development and

19 implementation of KAG West's SWPPP and compliance plan;

20    E.    Order KAG West to provide Soundkeeper, for a period beginning on the date of

21 the Court's Order and running for three years after KAG West achieves compliance with all of

22 the conditions of the Permit, with copies of all reports and other documents which KAG West

23

24

COMPLAINT - 12

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

submits to Ecology regarding KAG West's coverage under the Permit at the facility at the time these documents are submitted;

      F.     Order KAG West to take specific actions to remediate the environmental harm caused by its violations;

      G.     Order KAG West to pay civil penalties of $64,618 per day of violation for each violation committed by KAG West, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

      H.     Award Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

      I.     Award such other relief as this Court deems appropriate.


      RESPECTFULLY SUBMITTED this 23rd day of October, 2023

                       **SMITH & LOWNEY, PLLC**

By:        By: *s/Alyssa Koepfgen*
                 Alyssa Koepfgen, WSBA #46773
                 By: *s/Katelyn Kinn*
                 Katelyn Kinn, WSBA #42686
                 Attorneys for Plaintiff
                 2317 E. John St.,
                 Seattle, WA 98112
                 Tel: (206) 860-2124
                 Fax: (206) 860-4187
                 E-mail: alyssa@smithandlowney.com,
                 katelyn@smithandlowney.com

COMPLAINT - 13

# Exhibit 1

# SMITH & LOWNEY
## ——— PLLC ———
## ATTORNEYS AT LAW

August 18, 2022

**Via Certified Mail - Return Receipt Requested**

Managing Agent
KAG West LLC
401 E Alexander Ave
Tacoma, WA 98421

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St, Seattle, WA 98112). This letter is to provide you with sixty days notice of Soundkeeper's intent to file a citizen suit against KAG West LLC ("KAG West") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by KAG West's National Pollution Discharge Elimination System ("NPDES") permit.

KAG West was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 2, 2015 and expired on December 31, 2019 under NPDES No. WAR305116 (the "2015 Permit"). Ecology granted KAG West coverage under the current iteration of the ISGP effective January 1, 2020, and set to expire on December 31, 2024 (the "2020 Permit") and maintains the same permit number, WAR305116.

KAG West has violated and continues to violate the CWA (see Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342) and the terms and conditions of the 2015 Permit and the 2020 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 401 E Alexander Ave, Tacoma, WA 98421 (the "facility") as described herein, to Commencement Bay via the Blair and Hylebos Waterways. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by KAG West.



## I.      COMPLIANCE WITH STANDARDS

### A.      Violations of Water Quality Standards

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits require that KAG West's discharges not cause or contribute to an excursion of Washington State water quality standards.

KAG West discharges to Commencement Bay directly from all outfall locations located at the facility. The section of the Columbia to which KAG West discharges does not meet water quality standards is included on the state's "303(d) list" of impaired water bodies. KAG West discharges stormwater that contains elevated levels of copper, zinc, turbidity, and total suspended solids, as indicated in the table of benchmark excursions below. These discharges cause and/or contribute to violations of water quality standards for copper, zinc, turbidity and total suspended solids in Commencement Bay and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation, and continue to occur. *See* WASH. ADMIN. CODE §173-201A-210 (marine water designated uses), (1) (a) and (b) (general criteria that apply to all aquatic life marine water uses), (1)(e) (aquatic life turbidity criteria), (3) (recreational uses), (4) (miscellaneous uses); § 173-201A-240 (toxic substances criteria for copper and zinc) §173-201A-260 (natural conditions and other water quality criteria and applications); §173-201A-610 (use designations – marine waters); §173-201A-612 (designated used for Inner Commencement Bay including: salmonid migration and rearing; other fish migration rearing and spawning; clam, oyster, and mussel rearing and spawning; crustaceans and other shellfish rearing and spawning; primary contact recreation; salmonid and other fish harvesting; crustacean harvesting; and miscellaneous uses including wildlife habitat, commerce and navigation, boating, and aesthetics).

2

**Table 1 – Benchmark Exceedances**

| Quarter in which sample was collected and monitoring point | Turbidity (Benchmark 25 NTU) | Copper (Benchmark 14 µg/L) | Zinc (Benchmark 117 µg/L) | Total Suspended Solids (Benchmark 30 NTUs) |
|---|---|---|---|---|
| 2019 Q1 1* 3* | | 35 | 130 | |
| 2020 Q2 1 3 | 49 | 34 72 | 180 | |
| 2020 Q3 1 3 | | 83 77 | 150 240 | |
| 2021 Q1 1 3 | 26 | 15 16 | | 41 |

*1 and 3 are monitoring points designations used and known by KAG West.

### B.    Compliance with Standards

Condition S10.C of the Permits requires KAG West to apply all known and reasonable methods of prevention, control and treatment ("AKART") to all discharges, including preparation and implementation of an adequate SWPPP and best management practices ("BMPs"). KAG West has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs as evidenced by the elevated levels of pollutants in its discharge indicated in the table above and as described below in this notice of intent to sue.

Condition S1.A of the Permits requires that all discharges and activities authorized be consistent with the terms and conditions of the permits. KAG West has violated these conditions by discharging and acting inconsistent with the conditions of the Permits as described in this notice of intent to sue.

## II.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

KAG West is in violation of the Permits' SWPPP provisions as follows:

1.  Condition S3.A of the Permits requires KAG West to develop and implement a SWPPP as specified. Condition S3.A.2 of the 2015 Permit and S3.A.1 of the 2020 Permit require the SWPPP to specify BMPs necessary to provide AKART and ensure that discharges do not cause or contribute to violations of water quality standards. On information and belief, KAG West has violated these requirements of the Permits each and every day during the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and BMPs necessary to comply with state water quality standards.

2.  Condition S3.A of the Permits requires KAG West to have and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to

3

maintain compliance with permit conditions.  On information and belief, KAG West has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented and has not been updated as necessary.

3.  The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.3 of the 2015 Permit and S3.A.2 of the 2020 Permit require that the SWPPP include BMPs consistent with approved stormwater technical manuals or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. *See: Stormwater Management Manual for Western Washington,* July 2019, https://fortress.wa.gov/ecy/ezshare/wq/Permits/Flare/2019SWMMWW/Content/Resources/DocsForDownload/2 019SWMMWW.pdf (current stormwater management manual for Western Washington). KAG West's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

4.  KAG West's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated.  The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities as required.

5.  KAG West's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

6.  KAG West's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required.  The SWPPP does not identify all areas associated with loading and unloading of dry bulk materials or liquids, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

7.  KAG West's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials.  The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be

4

present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required.  The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

8.  KAG West's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

9.  Condition S3.B.4 of the Permit requires that permittees include in their SWPPPs and implement mandatory BMPs.  KAG West is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

10.  KAG West's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee training (including an overview of what is in the SWPPP, how employees make a difference in complying with the SWPPP, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, and a log of the dates on which specific employees received training); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how KAG West will comply with signature and record retention requirements, and certification of compliance with the SWPPP and Permit).

11.  KAG West's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

12.  KAG West's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.  KAG West's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13.  KAG West's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

5

14.  KAG West's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required.  The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, storm sewers, or discrete ground water infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantization levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III.    MONITORING AND REPORTING VIOLATIONS

### A.    Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires KAG West to collect a sample of its stormwater discharge once during every calendar quarter.  Conditions S3.B.2.c of the 2015 Permit and S4.B.3.a of the 2020 Permit require KAG West to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled.  These conditions set forth sample collection criteria, but require the collection of a sample even if the criteria cannot be met.  On information and belief, the facility has at least 5 distinct points of discharge off-site: Outfall 1, Outfall 2, Outfall 3, Outfall alternative 1, and Outfall alternative 3.

KAG West violated these requirements by failing to collect stormwater samples at any of its designated monitoring points during the first, second, third and fourth quarters of 2018; first, second, and third quarters of 2019; first quarter of 2020; second, third, and fourth quarter of 2021; first, second, third, and fourth quarter of 2022, and first and second quarter of 2023.

KAG West has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site. Namely, KAG West does not monitor discharge from Outfall 2, Outfall alternative 1 or Outfall alternative 3. These violations have occurred and continue to occur each and every quarter during the last five years that KAG West was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge.  These violations will continue until KAG West commences monitoring all distinct points of discharge.

### B.    Failure to Analyze Quarterly Samples

Condition S5.A.1, Table 2, Condition S5.B, and Table 3, Condition S6.C, and Table 7 of the Permits requires KAG West to analyze stormwater samples collected quarterly for turbidity, pH, total copper, and total zinc, total suspended solids ("TSS"), and northwest total petroleum hydrocarbon (NWTPH Dx).

KAG West violated these conditions by failing to analyze stormwater samples as describe in Table 2 below:

6

**Table 2 – Parameters Not Analyzed**

| Monitoring Period | Parameters Not Analyzed |
|---|---|
| 2019 Q4 | |
| 1* | TSS |
| 3* | TSS |
| 2020 Q2 | |
| 1 | NWTPH Dx, TSS |
| 3 | NWTPH Dx, TSS |
| 2020 Q3 | |
| 1 | NWTPH Dx, TSS |
| 3 | NWTPH Dx, TSS |
| 2020 Q4 | |
| 1 | TSS |
| 3 | TSS |
| 2021 Q1 | |
| 1 | |
| 3 | TSS |

*1 and 3 are monitoring points designations used and known by KAG West.

     **C.**     **Failure to Timely Submit Discharge Monitoring Reports**

     Condition S9.A of the 2015 Permit and S9.B of the 2020 Permit require KAG West to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. KAG West has violated these conditions by failing to submit a DMR within the time prescribed for first, second, third, and fourth quarter of 2018; second quarter of 2020; third, and fourth quarter of 2021; and first and second quarter of 2022. KAG West also violated these conditions by failing to submit a DMR at all for the first quarter of 2020, first quarter of 2021, and second quarter of 2023.

     **D.**     **Failure to Comply with Visual Monitoring Requirements**

     Conditions S7.A and B of the Permits require that monthly visual inspection be conducted at the facility by qualified personnel. Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed).

     Condition S7.C of the Permits requires that KAG West record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible

corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that KAG West plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

KAG West is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.    CORRECTIVE ACTION VIOLATIONS

### A.    Violations of the Level One Requirements

Condition S8.B of the Permits requires KAG West take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark value described in conditions S5.A and S5.B of the permits.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires KAG West: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits.  Condition S8.B.4 of the Permits require KAG West implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A, Table 2, Condition S5.B, Table 3, Condition S6.C, and Table 7 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 μg/L; and total zinc 117 μg/L; TSS 30 mg/L; and NWTPH Dx 10 mg/L.

KAG West has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time since January 1, 2018, its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark ranges, including the benchmark excursions listed in Table 1 above.

### B.    Violations of the Level Two Requirements

Condition S8.C of the Permits requires KAG West take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value for any two quarters during a calendar year.

8

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires KAG West: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the 2015 Permit and S3.A.5 of the 2020 Permit; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.B of the 2015 Permit and S9.C of the 2020 Permit. Condition S8.C.4 of the Permits require KAG West implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than August 31st of the following year.

The Permits establish the benchmarks applicable to KAG West described in section IV.A of this notice of intent to sue letter.

KAG West has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time since January 1, 2018 its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated in Table 1 above, these violations include, but are not limited to, KAG West's failure to fulfill these obligations for copper triggered by its stormwater sampling during calendar year 2020; failure to fulfill these obligations for zinc triggered by its stormwater sampling during calendar year 2020.

## V. VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A. Failure to Record Information

Condition S4.B.3 of the Permits requires KAG West record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if KAG West collected the sample within the first 12 hours of stormwater discharge event, an explanation of why KAG West could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Upon information and belief, KAG West is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B. Failure to Retain Records

Condition S9.C of the 2015 Permit and S9.D of the 2020 Permit require KAG West to retain for a minimum of five years a copy of the current Permit, a copy of KAG West's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Upon information and belief, KAG West is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

9

## VI.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.E of the 2015 Permit and S9.F of the 2020 Permit require KAG West to take certain actions in the event KAG West is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit.  In such circumstances, KAG West must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and KAG West must immediately notify the appropriate Ecology regional office of the failure to comply.  KAG West must then submit a detailed written report to Ecology, including specified details, within 5 days of the time KAG West became aware of the circumstances unless Ecology requests an earlier submission.

On information and belief, KAG West routinely violates these requirements, including each and every time KAG West exceeded the numeric effluent limitation, as specified in Table 3, above, each and every time KAG West failed to comply with the corrective action requirements described in section IV of this notice of intent to sue, and each and every time KAG West discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Table 1, above.  All these violations may endanger human health or the environment.

## VII.    REQUEST FOR SWPPP

Pursuant to Condition S9.G of the 2020 Permit, Soundkeeper hereby requests that KAG West provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should KAG West fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the 2020 Permit, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## VIII.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper.  These violations are ongoing.  Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $37,500 per day for each violation that occurred through November 2, 2015, and $55,800 per day for each violation that occurred thereafter.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against KAG West. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Very truly yours,

SMITH & LOWNEY, PLLC

By: */s/Alyssa Koepfgen*
Alyssa Koepfgen
Katelyn Kinn

cc:    Michael S. Regan, Administrator, U.S. EPA
       Casey Sixkiller, Region 10 Administrator, U.S. EPA
       Laura Watson, Director, Washington Department of Ecology
       CT Corporation System, Registered Agent (711 CAPITOL WAY S STE 204, OLYMPIA, WA, 98501-1267)

11